UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ILENE SIEMER, et al.,

    INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
    SIMILARLY SITUATED,

        Plaintiffs,                              Case No. 07-CV-2170

vs.

THE QUIZNO'S FRANCHISE COMPANY LLC F/K/A THE
QUIZNO'S CORPORATION, et al.,

        Defendants.

**DECLARATION OF JOSEPH S. GOODE**

Joseph S. Goode states under penalty of perjury as follows:

1.     I am a shareholder of Kravit, Hovel & Krawczyk S.C. ("KHK") and, along with my partner Mark M. Leitner, am one of the attorneys of record representing the plaintiffs in this action. I have personal knowledge of the facts stated in this Declaration and the documents attached to it.

2.     Since approximately March 10, 2006, Mr. Leitner and I have been involved in the investigation and ultimate pursuit of claims against Quiznos and its various affiliates on behalf of the company's franchisees.

3.     In association with Mr. Leitner and our co-counsel, Justin M. Klein and Gerald A. Marks, of the Red Bank, New Jersey law firm of Marks & Klein, LLP ("M&K"), I assisted in the prosecution of five class action lawsuits against Quiznos that culminated in the settlement now before the Court. The five lawsuits are:

- *Raymond Bonanno, et al. v. The Quizno's Franchise Company, LLC, et al.*, Case No. 06-CV-02358- CMA-KLM (United States District Court for the District of Colorado) (the "*Bonanno Action*").

- *Fred N. and Michana A. Westerfield, et al. v. The Quizno's Franchise Company LLC, et al.*, Case No. 06-C-1210 (United States District Court for the Eastern District of Wisconsin) (Green Bay Division) (the "*Westerfield Action*").

- *McDonald, et al. v. The Quizno's Franchise Company LLC, et al.*, Case No. 2:07-CV-10838 (United States District Court for the Eastern District of Michigan) (the "*McDonald Action*").

- *Ilene Siemer, et al. v. The Quizno's Franchise Company LLC, et al.*, Case No. 07-CV-2170 (United States District Court for the Northern District of Illinois) (Eastern District) (the "*Siemer Action*").

- *Bonnie Brunet, et al. v. The Quizno's Franchise Company LLC, et al.*, Case No. 07-CV-01717 (United States District Court for the District of Colorado) (the "*Brunet Action*").

4. Four of the cases, what the parties refer to as the "Franchise Operator Class Action Litigation," relate to the rights of Quiznos franchisees who opened one or more restaurants in the Quiznos System. On November 20, 2006, KHK and M&K jointly filed the *Westerfield Action* in the United States District Court for the Eastern District of Wisconsin (Green Bay Division). That case was brought by franchise operators located in Wisconsin. On February 23, 2007, KHK and M&K jointly filed the *McDonald Action* in the United States District Court for the Eastern District of Michigan. That case was brought on behalf of franchise operators in Michigan. On April 19, 2007, KHK and M&K jointly filed this action on behalf of franchise operators in Illinois. Finally, on August 14, 2007, KHK and M&K jointly filed the *Brunet Action* in the United States District Court for the District of Colorado on behalf of

2

5. Mr. Klein filed the *Bonanno Action* in New Jersey on February 16, 2006. Mr. Leitner and I entered an appearance in that case on September 21, 2007. However, our work on the matter began in earnest on June 20, 2007.

6. In addition to the five lawsuits actually filed, KHK and M&K contemplated filing additional Franchise Operator Class Action Litigation against Quiznos in California ("the *California Action*") and New Jersey (the "*New Jersey Action*"). In anticipation of those filings, we opened matters at KHK in relation to them. KHK's timekeepers ultimately did not enter any time in the matter opened for the *California Action* (the work done in relation to it was billed to the file for the *Brunet Action*), although they did keep time in the matter designated for the *New Jersey Action*. Due to intervening events (primarily the extensive settlement negotiations that took place between April 2008 and August 2008 and again between June 2009 and October 2009) and the existence of the putative class action seeking redress on a national basis in the *Brunet Action*, we never filed these contemplated actions.

7. On September 17, 2009, this Court consolidated the four pending class actions. The parties had agreed to the consolidation to ease the burdens associated with administering the settlement and in the interest of judicial economy. The putative class members from those four actions now comprise the class and various subclasses thereof (collectively the "Class") delineated in the October 27, 2009 Class Action Settlement Agreement and Release (the "Settlement Agreement"). In fact, with the exception of the SNOs located in California, whose rights were resolved independently in another class action (the *Elhilu Action*), this consolidated litigation and proposed settlement resolves a nationwide dispute between Quiznos and its

8.      The Court appointed KHK and M&K as Class Counsel in its November 20, 2009 decision granting preliminary approval of the settlement [Dkt. 152].

9.      Mr. Leitner and I began our work on behalf of the Class while shareholders at the Milwaukee, Wisconsin law firm of Whyte Hirschboeck Dudek S.C. ("WHD").  Initially, we agreed to investigate potential claims against Quiznos as co-counsel with M&K related to claims that we considered bringing on behalf of franchisees in Wisconsin.  Our clients consisted of those who had entered into written contingency fee agreements with M&K; those fee agreements provided that WHD would serve as "Targeted State Co-Counsel" in association with M&K. While WHD ultimately agreed to assume the representation for a case in Wisconsin on a contingency fee basis, it nevertheless had its professionals maintain hourly time records of their work. For the period between March 10, 2006 and August 7, 2006, Mr. Leitner and I did not maintain time records for our investigatory work in relation to the matter.  We instead allocated our time to client development and worked with WHD's contingency fee committee to determine the firm's interest in pursuing the case.  Having secured the firm's approval to proceed in the Summer of 2006, Mr. Leitner and I began keeping contemporaneous time records of what would become the *Westerfield Action* on August 8, 2006.

10.     While at WHD, Mr. Leitner and I, in association with Mr. Klein and certain colleagues from WHD, conducted a pre-suit investigation, engaged in significant legal research, drafted an extensive complaint, and filed the *Westerfield Action*.  For the period between August 8, 2006 and June 22, 2010, WHD incurred attorneys fees of **$125,401.00** (the "WHD Lodestar") associated with a total of **483.05** hours of professional time broken out by timekeeper as follows:

4

| Timekeeper | Position | Total Hours | Hourly Rate |
|---|---|---|---|
| Kelly M. Dvorak | Associate | 12.00 | $170 |
| Joseph S. Goode | Shareholder | 255.60 | $260 |
| Jennifer J. Kopp | Associate | 3.60 | $225 |
| Mark M. Leitner | Shareholder | 113.20 | $325 |
| Ann M. Maher | Shareholder | 2.55 | $350 |
| Anthony J. Sievert | Associate | 61.70 | $225 |
| Travis J. West | Associate | 7.60 | $120 |
| Cindi M. Wittlinger | Paralegal | 26.80 | $135 |

11. Attached to this Declaration as **Exhibit A** is a true and correct copy of WHD's itemized time records for the period between August 8, 2006 and June 21, 2010 showing the individual time entries for each professional at WHD that worked on the *Westerfield Action*. Each time entry is segregated by: (a) date; (b) timekeeper; (c) description; (d) time expended; and (e) extended amount (i.e. hours multiplied by rate). The bill further provides (at the end) a summary by timekeeper of all time billed on the *Westerfield Action* by WHD.

12. The WHD Lodestar is offset by certain fee payments received by WHD during the time it worked on the *Westerfield Action*. Those payments, made by the Toasted Subs Franchisee Association, Inc. ("TSFA"), a not-for-profit association of Quiznos franchisees that was, among other things, instrumental in locating and retaining counsel, total $6,000. For certain months, WHD billed M&K $1500 for its share of a Monthly Retainer and M&K, in turn, paid WHD. Taking these payments into account, the net WHD Lodestar is **$119,401.00** (the "Net WHD Lodestar").

13. On January 16, 2007, Mr. Leitner and I formally tendered our resignations from WHD. We officially ended our employment at the firm on February 2, 2007. On February 5, 2007, we joined KHK as shareholders. Since then, all of our work on behalf of the Class was done at KHK. While KHK agreed to pursue the interests of the Class on a contingency fee basis, like WHD it nevertheless required that KHK's professionals maintain hourly time records of

5

| Timekeeper | Position | Hours | Hourly Rate |
|---|---|---|---|
| Aaron H. Aizenberg | Associate | 104.20 | $175 |
| Aaron H. Aizenberg | Associate | 264.00 | $185 |
| Aaron H. Aizenberg | Associate | 54.40 | $195 |
| Aaron H. Aizenberg | Associate | 1.90 | $215 |
| Melissa S. Blair | Associate | 2.80 | $195 |
| Melissa S. Blair | Associated | 26.10 | $225 |
| Jessica L. Farley | Law Clerk | 0.90 | $125 |
| Michael D. Fischer | Shareholder | 194.60 | $310 |
| Michael D. Fischer | Shareholder | 825.10 | $325 |
| Sarah J. Friday | Shareholder | 4.70 | $250 |
| Sarah J. Friday | Shareholder | 44.50 | $260 |
| Sarah J. Friday | Shareholder | 452.10 | $270 |
| Sarah J. Friday | Shareholder | 92.50 | $275 |
| Joseph S. Goode | Shareholder | 1035.10 | $300 |
| Joseph S. Goode | Shareholder | 1897.70 | $325 |
| Joseph S. Goode | Shareholder | 950.00 | $340 |
| Joseph S. Goode | Shareholder | 284.60 | $360 |
| Eric J. Hatchell | LawClerk | 32.40 | $140 |
| John F. Hovel | Shareholder | 1.20 | $315 |
| John F. Hovel | Shareholder | 0.50 | $320 |
| Olivia M. Kelley | Law Clerk | 37.70 | $130 |
| Olivia M. Kelley | Law Clerk | 1.10 | $135 |
| Stephen E. Kravit | Shareholder | 4.90 | $400 |
| Stephen E. Kravit | Shareholder | 283.20 | $425 |
| Beth J. Krause | Paralegal | 64.30 | $145 |
| Christopher J. Krawczyk | Shareholder | 289.00 | $275 |
| Christopher J. Krawczyk | Shareholder | 689.40 | $285 |
| Christopher J. Krawczyk | Shareholder | 142.40 | $290 |
| Christopher J. Krawczyk | Shareholder | 60.30 | $300 |
| Mark M. Leitner | Shareholder | 592.60 | $310 |
| Mark M. Leitner | Shareholder | 2089.40 | $360 |
| Andrew C. Maulbetsch | Document Tech | 1888.20 | $160 |
| Ellsbeth McGowan | Paralegal | 887.00 | $130 |
| Ellsbeth McGowan | Paralegal | 1594.30 | $135 |
| Ellsbeth McGowan | Paralegal | 1037.50 | $140 |
| Elizabeth Ann Mullins | Paralegal | 1.20 | $130 |
| Charles J. Peters | Accounting Paralegal | 22.00 | $160 |
| Martha J. Pettengill | Paralegal | 119.50 | $140 |

6

| Timekeeper | Position | Hours | Hourly Rate |
|---|---|---|---|
| Martha J. Pettengill | Paralegal | 18.10 | $145 |
| Jessica D. Poliner | Associate | 112.00 | $185 |
| Jessica D. Poliner | Associate | 158.00 | $195 |
| Benjanin R. Prinsen | Associate | 24.40 | $195 |
| Janice A. Rhodes | Shareholder | 463.00 | $300 |
| Kimberly S. Vitrano | Paralegal | 34.00 | $130 |
| Kimberly S. Vitrano | Paralegal | 87.60 | $135 |
| Kimberly S. Vitrano | Paralegal | 43.70 | $140 |
| Emily Weiss | KHK Librarian | 2.00 | $140 |

14. The KHK Lodestar identified in the preceding paragraph is offset by certain fee payments received by KHK during the time of the representation. Up through and including June 22, 2010, KHK received $63,750 in fees. Of that amount, $49,000 came from the TSFA. The TSFA agreed to pay M&K a total of $7,000/month as a Monthly Retainer. When KHK got involved, M&K and the TSFA agreed that the two law firms would split the Monthly Retainer. Each month M&K invoiced the TSFA $7,000 for that Monthly Retainer. KHK, in turn, invoiced M&K $3,500. Another $14,500 (of the $63,750) came from Quiznos, which paid these fees to Class Counsel in accordance with the April 1, 2009 order [Dkt. 226] issued by Magistrate Judge Kathleen M. Tafoya in the *Brunet Action* in relation to a discovery dispute between the parties. KHK deposited this sum in trust and paid litigation expenses with the funds. The final amount of fees ($250) came from certain defendants in the *Westerfield Action* who defaulted on an answer and were ordered by District Judge William C. Griesbach to pay $500 to Class Counsel [Dkt. 54] on February 16, 2007. We received this amount from those defendants on May 9, 2007 and paid M&K $250 on May 14, 2007. Taking the $63,750 in payments into account, the net KHK Lodestar is **$4,294,106.00** (the "Net KHK Lodestar").

15. Upon joining KHK, I immediately opened a matter to account for KHK's time in the *Westerfield Action* as the clients had authorized WHD to transfer the case to KHK at the time Mr. Leitner and I left WHD. I opened other matters during the time we prosecuted the case at

7

a. Attached to this Declaration as **Exhibit B** is a true and correct copy of KHK's itemized time records for the period between February 5, 2007 and September 15, 2009 showing the individual time entries for each professional at KHK that worked on the *Westerfield Action*. Each time entry is segregated by (a) date; (b) timekeeper; (c) description; (d) hourly rate; (e) time expended; and (f) extended amount. The bill associated with the *Westerfield Action* shows time charges totaling **$437,930.75** for the identified period.

b. Attached to this Declaration as **Exhibit C** is a true and correct copy of KHK's itemized time records for the period between March 1, 2007 and June 22, 2010 showing the individual time entries for each professional at KHK that worked on the *Siemer Action*. Each time entry is segregated by (a) date; (b) timekeeper; (c) description; (d) hourly rate; (e) time expended; and (f) extended amount. The bill associated with the *Siemer Action* shows time charges totaling **$792,203.00** for the identified period. I have instructed all professionals at KHK to submit remaining time in this litigation to the matter opened for the *Siemer Action*. I anticipate supplementing this Declaration at the Final Fairness Hearing (presently scheduled for June 30, 2010) to account for all time between June 23, 2010 and that day.

c. Attached to this Declaration as **Exhibit D** is a true and correct copy of KHK's itemized time records for the period between February 5, 2007 and September 17, 2009 showing the individual time entries for each professional at KHK that

8

d. Attached to this Declaration as **Exhibit E** is a true and correct copy of KHK's itemized time records for the period between June 20, 2007 and September 15, 2009 showing the individual time entries for each professional at KHK that worked on the *Bonanno Action*. Each time entry is segregated by (a) date; (b) timekeeper; (c) description; (d) hourly rate; (e) time expended; and (f) extended amount. The bill associated with the *Bonanno Action* shows time charges totaling **$837,518.50** for the identified period.

e. Attached to this Declaration as **Exhibit F** is a true and correct copy of KHK's itemized time records for November 10, 2008 showing the individual time entries for each professional at KHK that worked on the *New Jersey Action*. Each time entry is segregated by (a) date; (b) timekeeper; (c) description; (d) hourly rate; (e) time expended; and (f) extended amount. The bill associated with the *New Jersey Action* shows time charges totaling **$325.00** for the identified period.

f. Attached to this Declaration as **Exhibit G** is a true and correct copy of KHK's itemized time records for the period between February 7, 2007 and September 10, 2007 showing the individual time entries for each professional at KHK that worked on the *McDonald Action*. Each time entry is segregated by (a) date; (b) timekeeper; (c) description; (d) hourly rate; (e) time expended; and (f) extended

16. The KHK Net Lodestar segregated by matter is as follows:

| Action | Fees Incurred |
|---|---:|
| *Bonanno Action* | $837,518.50 |
| *Westerfield Action* | $437,930.75 |
| *Siemer Action* | $792,203.00 |
| *Brunet Action* | $2,194,427.75 |
| *New Jersey Action* | $325.00 |
| *McDonald Action* | $95,451.00 |
| **Fees Paid on Account** | $63,750.00 |
| **Net KHK Lodestar** | **$4,294,106.00** |

17. KHK has redacted the time records attached to this Declaration as Exhibits A-G to account for attorney work product and the attorney-client privilege. To the extent that the Court desires to review unredacted bills for the identified matters, KHK will produce them for review *in camera*. I am authorized to produce the WHD bill *in camera*, if necessary. WHD authorized the redactions made to its bill for the *Westerfield Action*. KHK has made similar redactions to supporting documentation submitted in relation to the request for reimbursement of litigation costs and expenses attached as Exhibits K-1, K-2, and L. KHK will produce complete copies of those records to the Court for *in camera* inspection if desired.

18. The bills submitted with this Declaration are in the format generally used by KHK in connection with all matters for which it tracks time for professional services performed. In connection with the various matters opened by KHK, I instructed the professionals at KHK to keep time records contemporaneously with the task performed or as soon thereafter as could be recorded in connection with the specific file for which the task was being performed. During the course of the litigation there were many instances where professionals at KHK engaged in projects that were related to and actually benefitted all pending cases against Quiznos. I

10

19. The hourly billing rates for the KHK and WHD professionals who worked on behalf of the Class are reasonable and in line with the prevailing market rates for similar services by lawyers of reasonably comparable skill, experience and reputation in the community. These rates are (or, in some cases, were) the normal and customary billing rates charged by the identified professionals at these two firms for the period in question. Attached to this Declaration as **Exhibits H-1 through H-5** are the following surveys setting forth market data on private billing rates charged in various regions around the United States. The exhibits include:

    a. **Exhibit H-1**: "The Survey of Law Firm Economics (2009 Edition)". Conducted and Published by Incisive Legal Intelligence in July 2009.

    b. **Exhibit H-2**: "A Nationwide Sampling of Law Firm Billing Rates", *The National Law Journal*, Vol. 31, No. 15, December 8, 2008.

    c. **Exhibit H-3**: "United States Consumer Law Attorney Fee Survey (Midwest Region)" (2008-2009) (2nd Ed.), Ronald L Burdge.

    d. **Exhibit H-4**: "United States Consumer Law Attorney Fee Survey (Atlantic Region)" (2008-2009) (2nd Ed.), Ronald L Burdge.

  e. **Exhibit H-5**: "United States Consumer Law Attorney Fee Survey (New York Region)" (2008-2009) (2nd Ed.), Ronald L Burdge.

20. The attorney fee surveys applicable to attorneys in this region of the United States (Exhibits H-1, H-2 and H-3) identified above bear out: (i) shareholder hourly rates ranging between $205 and $1180; and (ii) associate hourly rates ranging between $170 and $820 for attorneys at law firms like WHD and KHK in private practice who work in the Midwest or in markets such as Milwaukee (where WHD and KHK are based) or Chicago (where the Court is situated and where one of the cases has been litigated). (Exhibit H-2) The surveys further establish that specific competitors of KHK and WHD charge in ranges that are comparable to those charged by KHK and WHD in this case. For example, as of December 8, 2008, Michael Best & Friedrich, LLP reported a range of hourly billing rates of $235-$620 for partners (average $391; median $375) and $190-$375 for associates (average $252; median $245). (Exhibit H-2) Michael Best's firm-wide average hourly billing rate is $340 and its median is $305. (Exhibit H-2) Similarly, Quarles & Brady, LLP reported a partner hourly billing rate range of $280-$625 (average $419; median $420) and an associate hourly billing rate range of $200-$375 (average $252; median $245). (Exhibit H-2) Quarles & Brady's firm-wide average is $347 and its median is $342. (Exhibit H-2) The largest law firm in Wisconsin, Foley & Lardner, LLP, bills partners at an average of $596 (median $585) and associates at an average of $405 (median $395). (Exhibit H-2) The firm-wide hourly billing range at Foley & Lardner, LLP is $185-$985 (average $508; median $520). (Exhibit H-2) Additionally, the attorney fees surveys identified above note an average hourly rate for the typical consumer law attorney (all attorneys) in the Midwest of $293 (median: $262). (Exhibit H-3.) 57.9% of all Midwest consumer law attorneys have a billable hourly rate between $200 and $324. (H-3) While this litigation involved matters

21. The time incurred by KHK and WHD in pursuing the matters at issue was necessary and reasonable to the prosecution of a nationwide class action involving the rights of thousands of franchisees in a system with operations throughout the United States. For an extensive summary of the work completed by KHK and WHD (in association with M&K) on behalf of the class, I refer the Court to the November 18, 2009 Declaration of Mark M. Leitner [Dkt. 151].

22. The lead attorneys from WHD and KHK who worked on these matters have significant experience, background and abilities. They were selected to work on these matters based on their ability, expertise and specialties as the litigation dictated. Attached to this Declaration as **Exhibit I** are true and correct copies of the Martindale-Hubbell or similar professional biographies of the principal attorneys from KHK who worked on this litigation.

23. The out-of-pocket costs, disbursements, advances and litigation expenses associated with the pursuit the litigation on behalf of the Class were paid, in part, from a fund created by the TSFA. In its efforts to promote and fund the litigation, the TSFA created the LAP. Members of the LAP made payments to a fund, which the TSFA administered and paid out as instructed by Class Counsel. As set forth more fully in the Declaration of Joseph Zazzaretti, filed contemporaneously herewith, the TSFA (using the funds deposited into the LAP) directly paid $401,686.83 in costs, disbursements and advances associated with this

13

24. At certain points during the litigation, the TSFA issued checks to the "Trust Account of Kravit Hovel & Krawczyk S.C." with the understood purpose being that KHK would pay litigation expenses with those funds. The TSFA paid a total of $51,150 to KHK's trust account in this manner and KHK paid out that amount to cover various litigation expenses. Attached to this Declaration as **Exhibit J** is a true and correct copy of a ledger of the payments made by KHK using LAP funds along with the supporting documentation relative to those expenses. In that the LAP Litigants are being repaid their contributions to the LAP pursuant to paragraph 10.4 of the Settlement Agreement, neither the TSFA, KHK nor M&K seek reimbursement of these litigation expenses pursuant to paragraph 9.1 of the Settlement Agreement.

25. Due to the size and magnitude of the litigation, KHK and M&K handled certain of the costs, expenses, disbursements and advances directly. For the period February 5, 2007 through and including June 22, 2010, KHK paid litigation costs, expenses, advances and disbursements in the amount **$165,758.99** (Exhibit K-1) and has incurred (but not yet paid) such costs and expenses of **$444,226.23** (Exhibit K-2), for a total of **$609,985.22**. Attached to this Declaration as **Exhibit K-1** is a true and correct copy of a ledger of the litigation costs, expenses, and advances paid to date by KHK in relation to this litigation along with supporting documentation. Attached to this Declaration as **Exhibit K-2** is a true and correct copy of a

14

26. The TSFA paid WHD's costs, disbursements and advances directly. WHD does not seek reimbursement of any costs, disbursements or advances.

27. Certain of the representative plaintiffs incurred direct litigation expenses associated with their efforts on behalf of the Class. Certain of them incurred travel expenses due to their agreement to act as client representatives at the multi-day mediation session held in Los Angeles in August 2008. Others, as part of a cooperative effort among counsel to coordinate depositions and lower overall costs of the litigation, agreed to travel (at their expense) to the locale where the Quiznos' attorney sought to depose them. Finally, certain of these individuals traveled to Denver in April 2008 as part of a court-ordered mediation process in the *Brunet Action*. In total, these individuals seek reimbursement of **$12,894.51**. Attached to this Declaration as **Exhibit L** is a ledger and the associated documentation of the litigation expenses for which Class Counsel seeks reimbursement. Upon payment to KHK of this amount, KHK will reimburse each of the individuals identified in the stated amount.

28. Attached to this Declaration as **Exhibit M** is a true and correct copy of an April 14, 2010 article titled "Quiznos Settlement Sparks Franchisee Focus on Supply Chain Issues." This article was distributed by LEXIS in cooperation with the Association of Corporate Counsel. The article is authored by Jillian M. Suwanski of Baker, Donelson, Bearman, Caldwell & Berkowitz P.C.

29. On June 23, 2010, the Court granted Plaintiffs' June 22, 2010 Motion Seeking Leave to File Under Seal Confidential Declaration of Bruce S. Schaeffer, J.D., LL.M. [Dkt. 176]. Contemporaneous with the filing of this Declaration, I have made arrangements to file that document under seal. In accordance with the Court's June 23, 2010 Order, however, we have further submitted for the public record a redacted version of Mr. Schaeffer's appraisal of the settlement. Attached to this Declaration as **Exhibit N** is a true and correct copy of a redacted version of Mr. Schaeffer's June 7, 2010 report.

30. From August 11-13, 2008, I participated in the mediation of the SNO Class Action and the Franchise Operator Class Action Litigation that took place before the Honorable Dickran Tevrizian in Los Angeles, California. At the mediation, plaintiffs presented their position on damages in both the SNO Class Action and the Franchise Operator Class Action Litigation. The damages analysis was performed by Catharine M. Lawton of LECG and Ms. Lawton gave a presentation at the mediation. She made her presentation after engaging in extensive and substantive analysis of the records at issue in the months leading up to the mediation. The analysis done by Ms. Lawton reflected damages in the SNO Class Action of between $55 million and $65 million and in the Franchise Operator Class Action Litigation of more than $700 million.

      31.      Attached to this Declaration as Exhibit O is a true and correct copy of a February 18, 2010 letter I received M. Gabriel McFarland.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 23, 2010

                                              *s/Joseph S. Goode*
                                              Joseph S. Goode