**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ILENE SIEMER**, *et al.*, **Individually and On Behalf of All Others Similarly Situated,** )<br>)<br>) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | No. 07 C 2170 |
| ) | |
| **THE QUIZNO'S FRANCHISE COMPANY LLC** )<br>**f/k/a THE QUIZNO'S CORPORATION**, *et al.* ) | Judge Rebecca R. Pallmeyer |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM ORDER

In several lawsuits, current and former franchisees of the Quizno's Franchise Company, LLC, challenged the terms and conditions of their franchise agreements under a number of theories. They alleged, *inter alia*, that the agreements required franchisees to make inordinate payments to Quizno's in return for maintaining their franchises, and they charged Quizno's with engaging in unfair or deceptive business practices, including violations of state regulations, breach of contract, and various torts. After substantial discovery and motion practice, and two protracted settlement sessions, the parties reached a global settlement. The cases were consolidated in this court and, in a separate order, the court has approved the terms of that settlement. This order addresses an objection to the settlement, and motion to intervene, filed by Gary and Jill Gevaart and their Wisconsin business, Globe Food Services LLC. For reasons explained briefly here, the motion is granted, but the Gevaarts's request for discovery is denied, and their objection to the settlement is overruled.

## DISCUSSION

Quizno's is a nationwide franchisor of a popular fast-food sandwich shop. The settlement in this case effectively resolves claims brought against Quizno's by two nationwide classes of franchisees: one group of persons who had purchased franchises and paid franchise fees but never opened their Quizno's stores (the "Sold but Not Opened" or "SNO" class) , and a second group,

who had opened and operated their stores for various periods of time (the "Franchise Operator" class. Under the agreement, SNO class members receive credits for the purchase of equipment and supplies in order to open their stores; those SNO class members who chose not to proceed with the franchise receive payments of amounts ranging from $250 to $8,000, depending on the number of franchise agreements they had signed. Members of the Franchise Operator class receive certain credits for the purchase of food to be sold in their stores or, if they have sold their stores, a payment of $475. In addition to these forms of relief, members of the Plaintiff classes received other benefits, including forgiveness of past debts, and the release of Quizno's claims for future royalties. Franchise Operator class members who continue their franchise operations benefit, in addition, from significant changes in Quizno's business relationship with its franchisees. Representative class members also receive incentive awards in the amount of $12,500 for each of the SNO class representatives and $50,000 for the Franchise Operator class representatives.

**The Settlement Benefits Class III Franchisees**

The Gevaarts are members of a group of Plaintiffs referred to as "Class III," a subgroup of the Franchise Operator class. Class III members are franchisees who purchased and operated Quizno's restaurants but had closed them as of November 20, 2009. The Gevaarts argue that the proposed settlement is unfair to them and to certain other members of Class III who, like the Gevaarts, had paid their financial obligations to Quizno's at the time they closed their stores and therefore will not benefit from the settlement provision that releases Quizno's claims for past due royalties. The Gevaarts met their financial obligations to Quizno's, they assert, only by incurring substantial personal debt, which will not be relieved by this settlement. The only immediate financial benefit the Gevaarts would receive from this settlement is a payment of $1700, an amount they deem unreasonable and inadequate

The court agrees with Plaintiff that the Gevaarts's assertions of unfairness ignore the addition financial benefit conferred on Class III members in the form of forgiveness of their

obligation to make royalty payments over the life of their franchise term. The franchise agreement they signed September 16, 2005 renders the Gevaarts liable, in the event they terminate, "for a lump sum amount equal to the net present value of the Royalties and Marketing and Promotion Fees that would have become due . . . [for the 15-year life of the agreement]." The Gevaarts terminated their franchise agreement less than three years after they signed the agreement. Plaintiff's counsel calculates that the amount the Gevaarts owe under this provision exceeds $420,000. The court recognizes that the unpaid royalty and other fees may not have been recoverable as a practical matter from every franchisee who chose to terminate its franchise agreement. In fact, however, in at least one of the actions being settled as a result of today's order, Quizno's did file a counterclaim against the representative plaintiffs seeking recovery of such lost royalties and certain advertising fees for which they were liable.

In any event, in reviewing the terms of a class settlement, the court is not called upon to determine whether the parties have struck the "best possible deal." *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000), *aff'd* 267 F.3d 743 (7th Cir. 2001) . Nor can the court sustain a dissenting party's objection merely because the settlement is, in that party's view, not the best possible deal or the deal most beneficial to that particular class member. Notably, the Gevaarts are evidently not alone in having some reservations concerning the settlement. A not-insignificant percentage of those franchisees who received class notices opted out of this settlement. The Gevaarts were free to do so, as well, and to bring their own individual action against Quizno's or to negotiate independently for a better deal. The fact that they chose not to do so may not preclude their effort to intervene here; the parties disagree on this issue,[1] but the court need not decide it, and notes simply that the Gevaarts's ability to opt out provides some

---

[1] What is clear is that a party who objects to the terms of a class settlement at the fairness hearing is entitled to challenge it on appeal without having intervened. *Devlin v. Scardelletti*, 536 U.S. 1, 10-11 (2002).

assurance that they are not at the mercy of class counsel who, the Gevaarts suspect, have failed to advocate vigorously on their behalf.

The court has little difficulty concluding that this settlement does well serve the interests of the class members overall. The class actions they filed faced significant obstacles. Perhaps most importantly, the franchise agreement includes a provision prohibiting any class action claims. That provision has been enforced by at least one of the courts in which these cases have been pending. *See Bonanno v. Quizno's Franchise Co., LLC*, No. 06-cv-02358-CMA-KLM, 2009 WL 1068744 (D. Colo. Apr. 20, 2009). As noted, the Gevaarts were free to opt out of the settlement. If they had done so, and had chosen to go it alone, their claims against Quizno's would face other obstacles that militate in favor of the class action settlement now before the court. For reasons explained in detail in briefs supporting that settlement, the class members' claims that Quizno's made verbal misrepresentations are arguably defeated by the plain language of the written franchise agreements–agreements in which the franchise operators specifically acknowledged that beyond that writing, Quizno's had made no other commitments or promises to them. (Quizno's Parties Brief in Support of Final Approval [178], at 15-16, citing *Siemer v. Quizno's Franchise Co., LLC,* No. 07-cv-02170, 2008 WL 904874 (N.D. Ill. Mar. 31, 2008). Allegations that the franchise circular itself made inaccurate disclosures concerning vendor rebates are also on potentially shaky ground, in light of the clear statements about those rebates that do appear in the materials. *Id.* at 18-19. Any damages a franchisee could recover are limited, by the franchise agreement, to a single year's net profits. (Plaintiffs' Brief Opposing Objection, [159] at 7, citing Franchise Agreement § 21.3.) And, as noted earlier, a franchisee who sues Quizno's could face a counterclaim for recovery of lost future royalties. As Plaintiffs observe in their memorandum in opposition to this motion, "[t]he Gevaarts' apparent assumption that pursuing Class III members' claims should have been a walk in the part ignores the extensive litigation history and is simply incorrect." (*Id.* at 7.)

4

**Incentive Awards are Reasonable**

Nor is the court moved by the Gevaarts's objection to the $50,000 incentive awards for representative plaintiffs. As Plaintiffs note, courts have approved such awards in similar and much larger amounts. (*Id.*, citing cases.) The Seventh Circuit has directed that, in evaluating such an award, the court consider what steps the representative plaintiff has taken to protect the class's interests, the time and effort he or she expended, and the degree to which the class has benefitted from those efforts. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The court has already noted the benefits generated by this settlement: Members of Class III, including the Gevaarts, received only modest payments and do not benefit from changes in franchise practices to which Quizno's has agreed as part of this settlement. They do, however, receive releases from a contractual obligation to pay lost future royalties. Class I members, who continue as franchisees, will receive certain credits for the purchase of food as well as Quizno's commitment of $19 million to advertising and additional changes, including the establishment of an independent franchise association, third-party review of the prices paid for food and supplies, and a grievance procedure.

Moreover, as reflected in the settlement agreement, representative plaintiffs devoted substantial time and effort to working with counsel and to participating in written discovery as well as depositions. The representative plaintiffs genuinely feared retaliation from Quizno's; however valid those fears may have been, it bears noting that Plaintiff Anthony Bonanno was in fact the target of a counterclaim for lost future royalties, a claim he was required to report to federal regulators. (Declaration of Anthony Bonanno [160].) And Quizno's did in fact terminate the franchises of a group of franchisees who formed an organization to express their members' concerns. (Declaration of Michael Campbell [161].)

**No Further Discovery is Necessary**

Finally, the court addresses the Gevaarts's request for discovery concerning "the negotiations that led to the division of the proceeds of the Settlement Agreement among the

5

different Class members and the basis for the 'Incentive Awards.'" (Gevaarts' Objections and Memorandum of Law [156], at 14.) The Gevaarts's reply memorandum refines that request, explaining that the discovery they seek is "all centered around whether other Franchise Operator Class III members incurred additional, personal debt, like the Gevaarts, to stay current on [their obligations to Quizno's]." (Reply Brief in Further Support of Objection [168] at 1.) The Seventh Circuit has explained that such discovery is appropriate "only where the party seeking lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive, . . . ." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987). No such foundation has been laid here. The history of this case includes two lengthy settlement negotiations, one in August 2008 and another spanning dates from July through October 2009, managed by a former judge and, later, by an experienced mediator. Their declarations, and the court's own observations, confirm that the settlement negotiations were hard-fought and that the ultimate deal was the product of hard bargaining at arm's length. And, as Plaintiffs note, of 8,468 franchisees to whom class notice was sent, just one has filed an objection to the proposed settlement. (Plaintiffs' Brief Opposing Objection, at 13.) The Gevaarts are undoubtedly not alone in having incurred substantial personal debt to make the allegedly excessive payments to Quizno's, yet they alone seek to disturb the deal. The court has little inclination to permit discovery when as in this case, "objectors represent only a small percentage of the class, . . . ." *Hemphill v. San Diego Ass'n of Realtors*, Inc., 225 F.R.D. 616, 620 (S.D. Cal. 2005), citing A. Conte and H. Newberg, NEWBERG ON CLASS ACTIONS § 11.57 at 186 (4th ed. 2002).

In any event, the fact that the Gevaarts, or other Class III members, may have taken on substantial personal debt to pay Quizno's does not satisfy the court that the settlement agreement accords disparate treatment to them. Whether a class member suffered loss as a result of Quizno's purportedly unfair practices does not turn on whether he or she had substantial personal wealth, on the one hand, or was required to incur additional personal debt, on the other.

6

The Gevaarts have litigated their motion to intervene vigorously, but nothing in the record supports their concern that the settlement agreement is unfair to persons in their situation. At the fairness hearing in this case, Quizno's counsel called an expert witness who testified that the value to the Gevaarts of Quizno's agreement to release the claim for future royalty payments was at least $174,000. The Gevaarts offered nothing to rebut that testimony and did not even appear at the fairness hearing to cross-examine the witness. Their objection to this deal must be overruled.

## **CONCLUSION**

The Gevaarts's motion for leave to intervene is granted, but their request for discovery is denied, and their objection to the settlement is overruled.

ENTER:

Dated: August 13, 2010

_____
REBECCA R. PALLMEYER
United States District Judge